RENDERED:  JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0010-MR

MARINE LIFE SOLUTIONS, LLC                                         APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 22-CI-01886

FIELD & MAIN BANK, INC. AND
FIELD & MAIN BANCORP, INC.                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE:  In this civil appeal, we are asked to decide whether funds within a bank account were properly subject to a bank's right of setoff despite contentions that the funds deposited were not intended for the holder of the account.  After careful review of the record, we hold that the Fayette Circuit Court properly granted summary judgment to the bank, and thus AFFIRM.

## BACKGROUND

Appellant, Marine Life Solutions, LLC, ("MLS") is a limited liability company with its principal place of business in Edgewater, Florida. MLS often functioned as a vendor supplying parts for the automotive industry, particularly manufacturing parts. Pamayiota Toula Herndon ("Ms. Herndon") has served as MLS's sole corporate member throughout the LLC's existence. Toula's husband, Arthur Mark Herndon ("Mr. Herndon"), owns Moon Eyed Imagineering, LLC ("MEICO") – a Kentucky corporation located at all relevant times in Lancaster, Kentucky. Like MLS, MEICO has also been a vendor to the automotive industry, including providing manufacturing parts and materials. Toyota Tsusho America, Inc. ("TAI") – a non-party to this action, located in Huntsville, Alabama – sources parts and aggregates purchasing for Japanese automakers, including Toyota Manufacturing ("Toyota") and Mazda North American Operations ("Mazda"). TAI has been a purchaser at different times from both MLS and MEICO – buying parts and materials used in the assembly of vehicles.

At all relevant times, MLS maintained accounts at Wells Fargo Bank for business checking and operations. MEICO, by contrast, banked with the Appellee, Field & Main Bank, Inc. ("FMB"). In October 2018, MEICO executed a mortgage with FMB, pledging as security two (2) parcels of real property located in Garrard County, Kentucky. MEICO later defaulted on this loan by failing to

make required payments to FMB. By January 28, 2021, MEICO's defaulted balance owed to the bank was $558,987.80, and the balance in its FMB account was virtually zero.

*First FMB Transfer*

In February 2021, TAI issued a purchase order involving a substantial number of carts and baskets for ultimate production use by Toyota and Mazda. MLS asserts that although MEICO had the initial opportunity to supply the parts, it chose not to because Mr. Herndon was ceasing his company's operations to care for an elderly relative. In any event, MLS was able to provide the material for the TAI Order and did so, but only after TAI paid MLS a thirty percent (30%) down payment.

On May 27, 2021, MLS sent TAI invoice #120884 requesting payment for the supplied materials. The invoice indicated TAI previously paid a deposit to MLS in the amount of $163,251.98 (constituting the 30% up-front cost),[1] and the remaining balance was to be paid to MLS upon the completion and delivery of the materials. On June 25, 2021, after the materials had been supplied, TAI issued a wire payment in the amount of $380,837.29 as outlined in invoice #120884. Due to an error that MLS asserts was made by TAI's accounts payable

---

[1] The transfer payment for this deposit from TAI had arrived in MLS's account at Wells Fargo without issue.

department, TAI's payment went not to MLS's account at Wells Fargo, but to MEICO's account at FMB. Because MEICO still owed an outstanding debt to FMB, the bank on June 29, 2021, issued a Notice of Setoff for MEICO's Loan #59325, and began taking steps to seize the newly deposited funds.

Mark Herndon responded to the notice via an email to FMB's counsel indicating TAI would be sending a letter "requesting the deposit back as it was never intended to come to Moon Eyed anyway." Next, FMB received a letter via email from TAI on June 30, 2021, and another email from TAI on July 7, 2021. Based on its understanding of the facts, though, FMB ultimately determined the electronic deposit was made in the regular course of banking business, and, considering MEICO's default, that it had a contractual and statutory right to set off.[2] Consequently, FMB argues it acted within its rights and withdrew the TAI-deposited-funds from MEICO's account to satisfy the outstanding debt MEICO owed the bank for commercial property in Garrard County.[3] After it chose not to

_____

[2] FMB does concede that the subject invoice sent to TAI dated May 27, 2021, (Invoice # 120884 / PO #20788972) was from MLS, but notes that the purchase order from TAI dated February 2, 2021, (PO # 20788972) was directed to MEICO, not MLS. Both parties acknowledge that a factor contributing to TAI's action was that MLS and MEICO had the same address.

[3] Citing to the circuit court hearing held on December 6, 2024, MLS asserts that a lawyer for FMB conceded the bank was aware of the erroneous deposit by TAI within twenty-four (24) hours. MLS also cites to Mr. Herndon's affidavit and supporting attachments to claim the same lawyer (not the same counsel representing FMB in this litigation) told a TAI representative that the deposit was a mistake and would be returned. A review of the hearing does not support MLS's assertion and, for its part, FMB does not concede that any bank representative ever offered to refund TAI's payment. Although MLS further cites emails from TAI employee Brad

-4-

return the funds, on August 10, 2021, FMB filed a foreclosure action in Garrard Circuit Court to collect the remaining balance owed by MEICO.

*Second FMB Transfer*

On November 2, 2021, in a set of circumstances like those recounted above, Mazda sent a payment of $544,053.27 to MEICO's bank account at FMB. This payment, for automobile manufacturing parts, was also apparently intended for MLS. The parties differ over communications (or lack thereof) that happened after this deposit was made, but FMB proceeded as before and seized the funds pursuant to its right of setoff in relation to MEICO. FMB acknowledged that $188,952.15 of the deposited sum was set off (constituting the balance owed), thereby fully satisfying MEICO's outstanding loans.

Following the Mazda deposit set off, both parties acknowledge the remaining balance in MEICO's account was approximately $117,000. By December 1, 2021, FMB's counsel advised MEICO the mortgages it held were fully paid off and that releases would be filed. Thereafter, the releases were executed by FMB and filed with the Garrard County Clerk on December 21, 2021, giving MEICO title to the real estate free and clear of FMB's liens or former claims.

---

Mineer to the Herndons, those emails summarize the former's understanding of conversations with FMB's counsel; they do not directly reflect the bank's position.

*The Underlying Lawsuit*

On June 29, 2022, MLS filed the underlying action in Fayette Circuit Court.[4]  FMB contends that it had every right – through its account agreements, the loan documents, and by statute – to set off the subject deposits.  Eventually, FMB filed a motion for summary judgment and hearings were conducted on the motion on June 28, 2024, and December 6, 2024.

At the June hearing the trial court spent time discussing the relatedness of MLS and MEICO and agreed that FMB had a contractual and statutory right of set off.  The trial court also wondered aloud how MEICO could not be a party to the action and questioned whether the case could go forward without other parties being joined.  The trial court also questioned why FMB did not pause its right of setoff once put on notice of the erroneous TAI payment. Ultimately, the trial court overruled the Motion for Summary Judgment at this hearing.

Then, during the hearing on December 6, 2024, the trial court explained that the parties understood its position with respect to FMB having a statutory and contractual right to set off, but that it was concerned about equity. Again, the trial court commented that if MEICO and MLS were really two

---

[4] MLS's Complaint alleged five claims: (1) Breach of Fiduciary Duty; (2) Conversion and Civil Conspiracy; (3) Fraud; (4) Negligence or Gross Negligence; and (5) Unjust Enrichment.

independent companies, MEICO would be a party in this action. The trial court also said that a true case of third-party error would require bringing everyone in to figure out the issue. Ultimately, the trial court ruled that based on the record FMB had a contractual and statutory right to set off the debt with the subject funds; that no constructive trust was created by the mere depositing; and that its view of the case would be different if these parties had not in the past interchanged some of their business operations – pointing to funds withdrawn and property sold by MEICO after the setoffs and the lack of evidence that MEICO tried to make it right.

During the pending litigation, nothing in the record indicates that Mark Herndon or MEICO ever made MLS whole. In fact, on January 24, 2022, Mr. Herndon withdrew from FMB $117,069.17 – the entire account balance that remained after MEICO's debts had been settled. Additionally, MEICO later sold the two parcels of real estate released by FMB. First, on September 14, 2023, MEICO sold a released parcel for $50,000. Then, on November 7, 2023, MEICO sold the second released parcel for $325,000. There is no evidence in the record, however, that MEICO transferred to MLS the withdrawn $117,069.17, or any of the proceeds of the real estate sales (totaling $375,000).[5]

---

[5] MLS's bank statements from January 2022 until the 2024 trial court hearing show no corresponding deposit or credit to MLS for any of these funds.

This appeal followed. Other facts will be included in the analysis section as required.

**STANDARD OF REVIEW**

In ruling on summary judgment, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So, we operate under a de novo standard of review with no need to defer to the trial court's decision." *Adams v. Sietsema*, 533 S.W.3d 172, 177 (Ky. 2017).

**ANALYSIS**

As a threshold matter, we note that under RAP[6] 32(A)(4), MLS preserved all the issues referenced in its brief except for its arguments related to waiver. Raised for the first time in its briefing on appeal, MLS argues that FMB – by taking certain actions related to the collateral and the TAI transfer – waived its security interest in MEICO's account. We do not reach the merits of these waiver arguments because the lower court had no opportunity to rule. *See Oakley v.*

---

[6] Kentucky Rules of Appellate Procedure.

*Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012) ("[A]n appellate court cannot consider items that were not first presented to the trial court.").

### i) The Bank Properly Exercised its Right of Setoff

A bank's right of setoff is a long-standing legal provision, developed over many decades.[7] "When a depositor becomes indebted to a bank and defaults on the indebtedness, it is a well-established rule of law that the bank may exercise a right of setoff to enforce collection of indebtedness owed to it by a depositor." *Ferguson Enterprises, Inc. v. Main Supply, Inc.*, 868 S.W.2d 98, 99 (Ky. App. 1993). In practice, as was the case here, a bank's right of setoff is generally established through contractual and statutory authority. In its loan documents, MEICO granted and assigned to FMB the right to set off its accounts upon default. All parties agree that MEICO defaulted on the debt it owed to FMB. The authority found in the Promissory Note, thus, applies and does not restrict FMB's setoff ability to certain sources of funds:

> RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future . . . .

---

[7] Funds on deposit with a bank are, in a strict sense, debts owed by the bank to the depositor, the money itself being the bank's property. Thus, when a bank both holds a customer's funds on deposit and then lends the same customer money, the bank and the customer become mutual debtors. Thus, banks are entitled to offset a debtor's defaulted loan against funds in that debtor's deposit account. *See, e.g., Farmers' Nat. Bank v. Jones*, 234 Ky. 591, 28 S.W.2d 787, 788–89 (1930).

> Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

Furthermore, courts have held that a depository bank does not bear the burden to determine the source of funds deposited into its customers' accounts nor must it ascertain whether there is a creditor who may have a lien on those funds. *See Kentucky Highlands Inv. Corp. v. Bank of Corbin, Inc.*, 217 S.W.3d 851, 856 (Ky. App. 2006).

Article IX of the Uniform Commercial Code ("UCC"), as adopted in the Kentucky Revised Statutes ("KRS"), supports the same understanding. "After default, a secured party has the rights provided in this part of this article . . . ." KRS 355.9-601(1). If a bank holds a depository security interest, "in any event after default," the bank may exercise its right of setoff by applying the deposit account balance to the obligation secured by the deposit account. KRS 355.9-607(1)(d). Further, when a bank maintains a deposit account with a security interest, the bank's security interest prevails over another party's conflicting interest. *See* KRS 355.9-327(3); *see also Ky. Highlands*, 217 S.W.3d at 855 (discussing the "super-priority" status of a depository bank over others). Thus, even if MLS (or its vendors) arguably had a security interest in the funds on deposit, that interest would yield to FMB's.

MLS argues that FMB's setoff rights apply only to MEICO's funds with the bank and do not pertain to funds allegedly belonging to third parties.[8] Indeed, MLS seeks to create a category of funds, "erroneously-held proceeds," to which the right of setoff would not apply. MLS, however, cites no precedent to support its position. Though it seeks to distinguish *Ky. Highlands*, MLS cites no case that conflicts with the *Ky. Highlands*' general holding that, under the UCC, "depository banks receive an automatic perfected interest in the accounts of their customers." 217 S.W.3d at 856. Thus, we hold that the trial court did not err in concluding FMB properly exercised its statutory and contractual right to set off the funds in MEICO's account.

ii)    *No Constructive Trust, No Special Deposit, and No Equitable Remedy*

A constructive trust is an equitable remedy devised by courts to prevent one party benefiting to the detriment of another by wrongful conduct. Such a trust may be imposed to restore beneficial ownership when legal title has been lost due to illegal, deceptive, or unconscionable behavior by the titleholder. *Lowe v. Lowe*, 312 Ky. 640, 229 S.W.2d 442 (1950); *Kaplon v. Chase*, 690 S.W.2d

---

[8] MLS's criticism of the trial court for not making findings of fact related to the depository agreement is unavailing. First, the trial court had no obligation to do so under CR 52.01. Secondly, MLS's failure to raise a request for those findings waives that issue on appeal, under CR 52.04 ("A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.").

761 (Ky. App. 1985); *Bjorkman v. Protestant Episcopal Church*, 759 S.W.2d 583, 587 (Ky. 1988).

MLS argues FMB had notice the funds were received erroneously, and that a constructive trust is the appropriate remedy here for FMB's unjust enrichment. To make a valid claim for unjust enrichment, MLS must establish three elements: (1) a benefit conferred upon a defendant at the plaintiff's expense, (2) a resulting appreciation of benefit by the defendant, and (3) inequitable retention of the benefit without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009). However, rather than analyzing any of the three cited elements, MLS generally summarizes its theory that the funds were erroneously deposited before making a conclusory argument that "the Defendants were clearly unjustly enriched to the detriment of MLS as they had knowledge of the error, agreed to refund the deposit, and then kept the deposit despite receiving proof from TAI of the intended payee, MLS." This claim is unavailing because it both overstates the facts established in the record and overlooks, for example, nuances such as TAI's initiation of the bank transfer.

Furthermore, our precedent has held:

> a constructive trust is created by equity regardless of any actual or presumed intention of the parties to create a trust where the legal title to property is obtained through fraud, misrepresentation, concealment, undue influence or taking advantage of one's weakness or necessities, or through similar means or circumstances rendering it

-12-

> unconscionable for the holder of the legal title to retain the property.

*Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. App. 2007) (italics omitted). But here, there is no evidence in the record showing FMB committed fraud, misrepresentation, or concealment. Without any prompting or direction by FMB, funds were transferred from TAI, and then separately from Mazda, into the account of FMB's customer, MEICO – a company that had previously done business with TAI and Mazda.[9] The question of whether it was unconscionable for FMB to retain the deposited funds by offsetting MEICO's loan losses invokes equity principles.

Several factors present here keep us from sustaining MLS's claim on an equity basis. As the trial court noted, MLS did not sue the entity that arguably missent its payment, TAI. Also, although MEICO ultimately benefited from FMB's lien release against its Garrard County properties, MLS never sought to recover from MEICO by joining it as a party to this action. Finally, the available evidence in the record indicates that MEICO never used the proceeds from the sale of its released properties to make MLS whole – even though the close ownership ties of the two companies would have made that possible. As noted above, MLS's

---

[9] Arguably our case law requires a "party seeking the imposition of a trust to establish a 'confidential relationship' with the party upon whom the trust is to be imposed." *Keeney*, 223 S.W.3d at 849. That, however, is not present as no relationship exists between FMB and MLS, which is not even a customer of the bank.

sole owner, Pamayiota Herndon, was married to MEICO's sole owner, Mark Herndon. Finally, both Herndons were listed as MLS's "managers" on annual corporate reports[10] filed with the Florida Secretary of State from 2021 to 2023.[11] Considering the equities involved here, these close ties make FMB's actions neither inequitable nor unconscionable. Accordingly, MLS has failed to show by clear, definite, unequivocal, and satisfactory evidence that the need has arisen for a constructive trust. *Clark v. Smith*, 66 S.W.2d 93, 94 (Ky. 1933).

To support its position that a broad exception to the setoff rule exists, MLS relies on *Acuity, a Mut. Ins. Co. v. Planters Bank, Inc.*, which holds that a bank "may not apply a deposit, consisting of funds belonging to one other than the depositor, to the individual indebtedness of the depositor if it knows, or can properly be charged with knowledge of, the trust character or true ownership of the funds." 362 F. Supp. 2d 885, 889–90 (W.D. Ky. 2005) (internal quotation marks and citations omitted).

---

[10]MARINE LIFE SOLUTIONS LLC 2021-2023 ANNUAL REPORTS, FLORIDA DEPARTMENT OF STATE (2021) [https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=MARINELIFESOLUTIONS%20L190002048680&aggregateId=flal-119000204868-baabc3b1-e8e7-4072-8545-4727a0b784a5&searchTerm=marine%20life%20solutions%20llc&listNameOrder=MARINELIFESOLUTIONS%20L190002048680] (last visited Jun. 24, 2026).

[11] "A court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet." *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004).

Acuity was a surety that brought a subrogation claim to recover funds that a bank set off from the account of a contractor, Star Construction, after the latter defaulted. *Id.* at 887–88. Acuity argued that the bank held the funds in question in trust for the benefit of subcontractors completing a specific construction job and that the bank either knew or should have known this. Acuity thus asserted the funds never belonged to Star Construction, so the bank had no right to take them to repay Star Construction's debt. *Id*. at 890. The court, however, ruled for the bank, concluding this was not a situation where the bank colluded with Star Construction to defraud the intended beneficiary in an effort to collect on a personal debt. *Id.* at 895.

In the underlying circumstances here, from FMB's perspective, the subject deposit into MEICO's account was made in the ordinary course of banking business as a "general deposit" and was not made for a special purpose or as subject to a trust for the creditors of the depositor.[12] Certainly, no evidence was

---

[12] *Bank One v. Nat. Res. & Envtl. Prot. Cabinet*, 901 S.W.2d 52, 54 (Ky. App. 1995). The *Bank One* case provided, in relevant part:

> Bank deposits are typically characterized as either "general" or "special" deposits. A general deposit is ordinarily one made to the depositor's credit to be drawn upon in the usual course of banking business. By contrast, a special deposit involves either a deposit made for safekeeping by the bank or a deposit made for some special application or disposition. Where, by their contract, the parties mutually understand and intend that title to the money deposited shall not pass to the bank, the deposit is a special one. Kentucky has long recognized this distinction. [internal citations omitted throughout].

put forward that FMB had pre-knowledge about a special or unique purpose for the funds[13] and any alleged comments made by FMB's attorney after the deposit was made would not have changed the nature of the funds to a "special deposit." Thus, as soon as the funds were deposited into MEICO's account, they belonged to the bank. Furthermore, nothing in the record indicates FMB colluded with any party to collect a debt ahead of another beneficiary's right. Finally, to the extent that the *Acuity* ruling discusses equity considerations vis-à-vis bank offsets, the same analysis above regarding a constructive trust applies.

### iii)    Circuit Court's Remarks About "Related" Entities

MLS contends that the trial court's comments during the summary judgment hearings make it clear the trial court based its ruling on MLS and MEICO being "related" companies. Since, in MLS's view, there was no substantial evidence to support such a finding, it argues the trial court must be reversed. This argument is unavailing. A circuit court speaks exclusively through its written orders,[14] so the judge's observations on this point should not be taken as

---

*Id.*

[13] For example, the payment was not made to FMB for safekeeping, nor pursuant to any mutual understanding or agreement that FMB would hold the funds in MEICO's account for MLS's benefit or the benefit of any third party.

[14] *Kindred Nursing Ctrs. Ltd. P'ship v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).

the basis for its ruling, given its written order focuses on FMB's setoff right and the lack of foundation for a constructive trust.

## CONCLUSION

Because the trial court properly concluded that FMB acted within its authority when it exercised its right of setoff, we affirm the trial court's summary judgment ruling.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert Waters
Louisville, Kentucky

James M. Francis
Lexington, Kentucky

BRIEF FOR APPELLEE:

William T. Forrester
Carroll M. Redford, III
Lexington, Kentucky